[Crim. No. 547.   Third Appellate District.—January 26, 1921.]

## THE PEOPLE, Respondent, . v.   FRANK DODINI, Appellant.

[1] CRIMINAL LAW—ASSAULT WITH DEADLY WEAPON—EVIDENCE—VER-
DICT.—In this prosecution for an assault with a deadly weapon,
although the defendant did not shoot at the complaining witness,
the evidence as to his acts was sufficient to justify the verdict of
conviction.

[2] ID.—MISCONDUCT OF DISTRICT ATTORNEY—WAIVER OF ERROR.—A
defendant in a criminal prosecution is not in a position to claim
error based upon alleged objectionable remarks by the district at-
torney in his argument to the jury, where he did not in any way
nor to any extent invoke the aid of the trial court to have the jury
instructed to disregard them.

APPEAL from a judgment of the Superior Court of
Tehama County.   John F. Ellison, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Charles H. Braynard for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Dep-
uty Attorney-General, for Respondent.

PREWETT, P. J., *pro tem.*—The defendant was con-
victed of the crime of an assault with a deadly weapon
and he brings this appeal upon the grounds of misconduct
of the district attorney and insufficiency of the evidence
to justify the verdict.   [1]   At the time of the assault
the defendant and the complaining witness were neighbors,
living about half a mile apart.   At the time in question
certain cattle, the property of the defendant, strayed into
and upon the premises of the complaining witness.   The
latter, assisted by several other persons, was making an
effort to drive the cattle away when the defendant, armed
with a rifle, appeared on the scene and commenced vigor-
ously to abuse the members of the party.   He was very

1. What constitutes assault with a deadly weapon, note, **Ann. Cas.**
1912A, 1328.

angry.· When about one hundred yards distant, he raised his gun as though to shoot. At that moment the wife of the complainant screamed and he lowered the gun. He thereupon ran toward the party and when within seven or eight feet from the complainant he pointed the gun at the latter's stomach. In arriving at a conclusion as to the sufficiency of the evidence to justify the verdict, this court will accord full value, reasonably considered, to the evidence against the defendant. Primarily, it is the function of the jury to weigh the evidence and determine its credibility and this court will interpose its corrective powers only when it affirmatively appears that the jury has committed an error. It is true that the defendant did not shoot, but his failure to do so is only one circumstance in a chain necessary to establish the conclusion that he did not intend to do so. In the instant case the defendant angrily presented the gun in a threatening attitude. The wife of the complainant says: "I heard the click and saw him give the side movement and then raise the gun like that, and then point °it right at Mr. McMartin's back. . . . He didn't have it clear to his shoulder—he didn't raise it clear to his shoulder, but just like he was going to take aim and I hollered." Conceding that the gun was loaded, there is no room for controversy that his acts, up to this point, furnish every element of an assault with a deadly weapon. Whether his motive in desisting arose from the screams of the woman, or some obstruction intervening between him and his intended victim, or because he believed the distance too great or because he was seized with remorse or fear is material only. in so far as it may throw light on his original intent. But the jury upon sufficient evidence has found that his intent was felonious.

The defendant insists that the evidence does not show that the gun was loaded. The testimony above quoted is quite sufficient, even if standing alone, to show that it was loaded. Another witness says: "He throwed the lever down and brought it up as though he had loaded a gun; and I am very familiar with the various rifles, the carbine rifles, and I am almost positive a cartridge went in it, but I couldn't see the cartridge go in the gun."

[2] The remaining point made by the appellant is such misconduct on the part of the district attorney as

prevented the appellant from having a fair and impartial trial. The district attorney in the course of his argument to the jury said: "Another thing. They say this gun was unloaded, and there wasn't any shells on the place. Who owned this gun? Jack Mardley owned the gun, a man who worked for Dodini. Why haven't they brought him here to testify in this case? Why haven't they brought him here? Because he would have told you, if he had been brought here by them, that there was loads in the gun. It was loaded on that day. . . . " These remarks were objected to by the attorney for the appellant, but he did not in any way nor to any extent invoke the aid of the court to have the jury instructed to disregard them. Conceding, without deciding, that the remarks were objectionable, the appellant is not in a position to avail himself of the point. In *People* v. *Ye Foo*, 4 Cal. App. 743, [89 Pac. 545], a case strikingly like this, the court says: "The record merely shows that the language of the district attorney was excepted to as unsupported by any evidence and as prejudicial to the substantial rights of the defendant. The court was not asked to strike out the objectionable remark, nor does it appear that the court ruled upon the exception. It is but fair to require defendant's attorney, in case of objectionable remarks by the district attorney, to call the court's attention to them then and there and invoke the aid of the court to prevent the remarks from injuring the defendant, before he will be allowed to urge the matter as error in this court." Upon the whole case we are constrained to hold that the appellant had a fair trial; that he was properly convicted, and that he should suffer the penalty imposed.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.