[Crim. No. 1279.   Third Appellate District.—October 17, 1933.]

THE PEOPLE, Appellant, v. LEONORA SIMPSON, Respondent.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Appellant.

H. W. McGowan for Respondent.

THOMPSON, J.—The defendant was convicted of an assault with a deadly weapon, accomplished by thrusting the muzzle of a loaded rifle against the person of another with the threat to shoot him. The shooting was averted by wresting the weapon from the defendant and throwing it into a river near by. From an order granting a new trial the People have appealed.

The evidence is undisputed that at the time of the alleged assault there were ten loaded cartridges in the magazine of the rifle, although the firing chamber was empty. It is therefore contended the rifle, in that condition, did not constitute a deadly weapon, for the reason that the defendant did not possess the present ability to commit a violent injury, by firing the rifle, without first transferring a cartridge to the

firing chamber by the operation of a lever. In granting a new trial the trial court said:

"As I see it, that whole present ability element contained in the section, 240, is the hub around which the whole question whirls. . . . The assault consisted in pressing of the gun against the witness' body and making threats, and the duration of that assault was only until the interruption came. Now during . . . the process of the assault, was the present ability there to discharge the gun? There remained something more to be done before the gun could be discharged."

The affray grew out of a quarrel respecting the use of a bridge which crosses a stream in the vicinity of the defendant's property. The road crosses this bridge at a considerable grade. The trucks of a business enterprise were accustomed to cross this bridge. In a prior conversation over the telephone, with Campbell, the employer of the truckmen, the defendant said, "You tell your men if they do any more stopping on that bridge or around the bridge, I am not going to fool with them any more, *they will have to tell it to the undertaker*." On the day upon which the assault occurred a truck and trailer accompanied by three men stopped at the bridge. They were searching for a wooden tongue which they had left there to adjust between the vehicles to prevent the trailer from running on to the truck while descending the grade. The tongue had been thrown into the river. While they were seeking for the tongue the defendant hurried across the adjacent field armed with a rifle. She encountered Roy Eiland on the bridge. They were standing about eight feet apart while they engaged in a heated controversy over the use of the bridge. The defendant was enraged. Eiland was unarmed. After a few moments the defendant stepped up to within three feet of Eiland, and according to the testimony of two or three witnesses, she thrust the muzzle of the rifle "right up against Roy's stomach", with the finger of her right hand on or near the trigger and lever of the gun. She then said she was going "to shoot a hole through him". A squabble ensued for the possession of the gun. Eiland wrested it from her grasp and threw it into the stream. Within a few hours thereafter the rifle was recovered from the water by an officer. The magazine of the weapon was found to contain ten loaded cartridges. The lever which transfers the cartridges from

the magazine to the barrel had been thrown down to an angle of about forty-five degrees. There is no dispute over the presence of the loaded cartridges or the position of the lever.

There is a conflict regarding the material question as to whether the defendant actually thrust the muzzle of the rifle against the person of Eiland with a threat to shoot him. There is also a conflict as to whether she made any effort to transfer a loaded cartridge from the magazine of the rifle to the firing chamber by operating the lever. Mr. Lance Papst, a friend and companion of the defendant who arrived in his automobile at the scene of the conflict, testified: "When I brought the car to a stop I heard her say 'Oh beat it,' and she turned to walk by [Mr. Eiland] and as she passed he grabbed the gun and turned her around and drug her. . . . She had it [the gun] across her shoulders and behind her neck with the stock of the gun over her right shoulder. . . . I shut the motor off and pulled on the emergency brake and by the time I could get out they were at the hind wheel of the car, and as I stepped out she had lost her hold on the barrel of the gun with her left hand and it was coming down on top of her head and I threw up my left hand to stop the blow and it hit me across the left hand. . . . Q. Did you hear Miss Simpson say to Eiland 'I will blow a hole through your guts'? A. No. . . . Q. Was this the position of the gun [over her right shoulder] when Mr. Eiland grabbed the gun? A. It was."

It appears that two other men arrived at this critical moment and a general affray ensued. Eiland secured possession of the rifle and threw it into the stream. There was some attempt to impeach the testimony of Papst. His credibility and the weight to be given his evidence were, however, problems for the determination of the trial judge upon the motion for a new trial.

The granting or denial of a new trial is largely within the discretion of the trial judge, who has the exclusive right to pass upon the credibility of witnesses and upon the weight and sufficiency to be accorded the evidence in support of the verdict of a jury. The determination of a trial court to either deny or grant a new trial will therefore not be disturbed on appeal except for a clear abuse of its discretion. (2 Cal. Jur. 905, sec. 533, 20 Cal. Jur. 27, sec.

13; *People* v. *Skoff*, 131 Cal. App. 235 [21 Pac. (2d) 118]; *People* v. *Ferlin*, 203 Cal. 587, 596 [265 Pac. 230].)

In view of the conflict of evidence which exists in the present case regarding the acts upon which the question of the defendant's guilt of the alleged assault with a deadly weapon depends, it becomes necessary to affirm the order granting the new trial, in spite of the fact that the trial judge may have assigned incorrect reasons therefor, since the discretion of the trial court with respect to the credibility of witnesses and the weight and sufficiency of the evidence may not be disturbed on appeal except for a clear abuse thereof.

The motion for a new trial was made on all the grounds authorized by the provisions of section 1181 of the Penal Code. The minute order of the court merely recites that: "It is ordered that said motion for a new trial of the action be granted." It follows that if the new trial was properly granted on any of the grounds upon which it was presented, the order should be affirmed, regardless of the reasons assigned therefor by the judge. (*White* v. *Merrill*, 82 Cal. 14 [22 Pac. 1129]; *Gordon* v. *Roberts*, 162 Cal. 506 [123 Pac. 288]; 20 Cal. Jur., p. 196, sec. 30.) In the first case cited it is said:

"The court below may give an opinion, oral or in writing, upon any motion or question that arises in the course of proceedings before it, or upon the final determination of a cause; but such opinion constitutes no part of the record on appeal. No matter what reason the court below may assign for its action, this court is not bound by such reason. If this court finds that upon any ground or for any reason the action of the court below was correct, such action will be affirmed, regardless of the reason which the court may have given for it."

We are not in accord with the view expressed by the trial judge with respect to the question as to whether a rifle which contains loaded cartridges in the magazine and which requires only an instantaneous transfer of a shell to the firing chamber by operation of a lever, constitutes a deadly weapon with which the possessor has the present ability to commit serious injury by firing the weapon. In view of the necessity of a new trial in this case, for the

guidance of the court, we therefore express our opinion regarding that problem as follows:

It has been held that an assault with a deadly weapon is not accomplished by merely pointing an unloaded weapon at one with a threat to shoot him, for the reason that the assailant then lacks the present ability to commit a violent injury upon the person of another in that manner. (*People v. Sylva,* 143 Cal. 62 [76 Pac. 814] ; 3 Cal. Jur. 207, sec. 21.) Section 240 of the Penal Code defines an assault as ''an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another''. In this case there is no contention that the defendant attempted or intended to assault Eiland in a manner other than by firing the rifle at him. Ordinarily the manner in which a rifle is used determines whether it is a deadly weapon in the accomplishment of an assault. Usually it becomes a mixed question of law and fact to be decided by the jury under proper instructions. (3 Cal. Jur. 206, sec. 21.) In the present case, under proper instructions, the jury found, by inference, that the rifle was loaded and that the defendant then had the present ability to commit a violent injury upon the person of Eiland by shooting him. The court assumed the defendant did not have the present ability to discharge the rifle because it was first necessary to transfer a cartridge from the magazine to the firing chamber of the gun by throwing down the lever. This could be done instantly. The operation of the lever automatically transfers a cartridge ready to be fired.

An automatic repeating rifle may not be termed an unloaded gun when its magazine contains loaded cartridges which may be instantly transferred to the firing chamber by the mere operation of a lever. It is unreasonable to hold that a rifle is unloaded and that it is not susceptible of immediate discharge under such circumstances. One may just as reasonably assert that a pistol with an automatic revolving cylinder filled with loaded cartridges does not constitute a deadly weapon, although the mere pressure of a finger upon the trigger releases a safety-pin and adjusts a cartridge in position to be discharged. It is equally unreasonable to assert that an assailant has not the present ability to commit a violent injury upon the person of another by means of a sword or dagger because it is necessary to first withdraw

the weapon from a scabbard which hangs by his side. We are of the opinion an automatic repeating rifle which contains loaded cartridges in its magazine may constitute a deadly weapon with which one may have the present ability to commit violent injury upon another person, by firing the weapon at him, although it is first necessary to transfer a loaded shell to the firing chamber by operating a lever. The questions as to whether the accused person really intends to transfer the shell and fire the weapon are facts to be determined by the jury from the circumstances of the case. (*People* v. *Dodini,* 51 Cal. App. 179 [196 Pac. 510].)

For the reason that the record in the present case contains a substantial conflict of evidence regarding the commission of the alleged assault with a deadly weapon, the order granting the new trial is affirmed.

Plummer, J., and Pullen, P. J., concurred.