[Crim. No. 3268. First Dist., Div. One. June 27, 1957.]

THE PEOPLE, Respondent, v. HENRY LEO GOMEZ, Appellant.

George Nye, Public Defender (Alameda), and Robert D. Dunivan, Assistant Public Defender, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—Convicted of robbery of the first degree (violating Pen. Code, § 211) defendant does not question the sufficiency of the evidence but predicates his appeal upon certain errors which he claims occurred during the progress of the trial.

Defendant took the witness stand and testified in his own behalf. Upon cross-examination he was interrogated at some length on the question whether he had previously been convicted of a felony.

The prosecutor asked, "Have you ever been convicted of a felony?" Defendant answered, "Nope." Then the following ensued: "Q. [By deputy district attorney] In 1948 on March 2nd were you convicted of a felony on that day? A. It all depends what it was. Q. I beg your pardon? A. All depends what it was. MR. DUNIVAN [defendant's counsel]: Your Honor, I object to this question. It has been asked and answered. THE COURT: He has a right to go further. Give him the specific date and the charge and the court. Q. . . . [By deputy district attorney] on the 6th of March of 1948 were you convicted of two counts of robbery and two counts of kidnaping? A. They said it wasn't me, but they still prosecuted me because I was there. Q. On the 22nd of March, 1948, was there a finding made at that time that you had committed a felony? A. They said I did. Q. Pursuant to their saying you had done certain things, were you sent to a state institution and did you stay in that state institution for a period of time? A. I did. Q. What was the institution? A. Mendocino, I think. Q. Mendocino State Hospital for the criminally insane? A. (nodding affirmatively.) Can I say something, too, Your Honor? THE COURT: Go ahead. THE WITNESS: Now, I don't see what bearing this has whatsoever because they tried to pull the same thing the other time. They tried to get me to see a couple of doctors to see whether I was nuts or not. The doctor said I am not insane or nothing, that I have no blackout spells whatsoever. But just on people's hearsay I was convicted on that crime. Q. . . . [By deputy district attorney] So, I see that although you were sent to a hospital for the insane at that time you were not insane; is that right? A. That's right. Q. So when you—— MR. DUNIVAN: Your Honor, this is beyond the scope of direct and it certainly has carried too far. It is irrelevant, inflammatory; it has gone far beyond the scope of the direct. THE COURT: Overruled. He has a right to go into it. Q. . . . [By deputy district attorney] So, actually you knew what you were doing at the time you did this other offense; is that correct? A. I

didn't do nothing. You are saying I did it. I didn't do nothing. Q. I see. A. According to their statement, when they said I never laid a hand on them or that I had no gun in my hand whatsoever, because I was there, I was charged with the same crime. They sent me to the hospital because they said I was juvenile delinquent — psycopathic delinquent is what they termed me — yet when the people gave their statement there at the police station, they said I had nothing to do with it, but through some fault of some guy in the court room I still got the same time. Q. Through some mistake or error of the officials involved —— A. That's right. Q. —— you were sent to this hospital incorrectly or unjustly; is that true? A. That is the way I look at it. If the people said I didn't do it, then why should they send me there?''

Upon redirect it developed that defendant was sent to Mendocino State Hospital from the juvenile court. Thereupon his counsel moved for a mistrial, saying: ''Your Honor, I would move at this time for a mistrial on the basis that the District Attorney has stated and asked questions regarding a felony conviction when we know that a person who is sent from the Juvenile Court is not convicted of a felony, and also that this is bringing in inflammatory material and, being it is before the jury, that it would be incapable at this time of having a fair trial.'' The court ruled ''You have covered it by redirect. Motion denied.''

At the beginning of the session on the next day the court, upon its own initiative, commendably struck from the record all of the testimony above mentioned and instructed the jury to disregard all of it.

We are thus presented with the question whether the prosecution committed prejudicial misconduct in the course of this cross-examination and, if so, whether the prejudicial effect it might otherwise have had was erased by striking the testimony and instructing the jury to disregard it.

■ A witness may be impeached by the opposite party ''not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment that he had been convicted of a felony.'' (Code Civ. Proc., § 2051.) He ''must answer as to the fact of his previous conviction for felony.'' (§ 2065.) This provision applies to a defendant who becomes a witness. (*People* v. *Williams*, 27 Cal. 2d 220, 228 [163 P.2d 692], and cases there cited.) In any such case ''a cross-examiner's question must be limited to the fact of conviction and the nature of the crime; he may not go into

the details or circumstances surrounding the crime. [Citations] . . ." (*People* v. *Braun,* 14 Cal.2d 1, 6 [92 P.2d 402].)

And, of course, "convicted of a felony" means precisely that. It does not include, for example, an order of a juvenile court declaring a minor a ward of that court, for such an order is *not deemed* a "conviction of crime." (Welf. & Inst. Code, § 736. See also *In re Daedler,* 194 Cal. 320, 332 [228 P. 467]; *People* v. *Hoffman,* 199 Cal. 155, 159 [248 P. 504]; *People* v. *Adams,* 76 Cal.App. 178, 185 [244 P. 106], hearing by Supreme Court denied.)

The attorney general concedes there was error. He appropriately says: ". . . where a juvenile is subjected to proceedings in juvenile court, even though the act of the juvenile was a felony, the proceedings before the juvenile court never result in a felony conviction and, consequently, the juvenile cannot be subsequently impeached on the basis of the juvenile court proceeding."

However, he claims it was not reversible error. This he does upon the theory, it would seem, that the prosecutor was acting in good faith, that without objection defendant admitted conviction of a felony, that thereby the burden of proving it was a juvenile court order shifted to the defendant, that the striking of the evidence and the admonition to the jury erased the effect of the error and there could be no prejudice because the evidence of guilt was convincing. This, we think, is an unrealistic view of the situation. The evidence of guilt was convincing or not according to whether the jury were to believe the testimony of the prosecuting witness Baker or the testimony of the defendant. They were diametrically opposed in the stories they told. They had known each other for some time and there was some evidence of ill feeling between them which might motivate Baker to frame the defendant. There was no other direct evidence. The indirect evidence was meager and equivocal. Any impeaching evidence against the one or the other of these two witnesses well might tip the balance in the minds of the jury. If any incompetent impeaching evidence concerning defendant's credibility were exposed to view it could be highly prejudicial.

"To affirm the judgment . . . [in such a case] . . ., despite the admission of the impeaching statements, this court must determine that, considering the entire record, the error did not prejudice the defendant's rights. (Const., art. VI, § 4½.) If it cannot be said that, in the absence of the error complained of, a different verdict would have been improbable,

the erroneous ruling constitutes a miscarriage of justice, within the meaning of the constitutional provision." (*People* v. *Newson*, 37 Cal.2d 34, 44-45 [230 P.2d 618].)\*

█ We are not convinced that the prosecutor pursued the inquiry in good faith. Upon receiving a negative answer to the first question ("Have you ever been convicted of a felony?"), he narrowed it down to a specific date (March 2, 1948) and defendant replied "It all depends what it was," whereupon defense counsel objected that the question had been asked and answered, but was overruled. The court then instructed the prosecutor to give "the specific date and the charge and the court," whereupon the prosecutor gave the date and the charges (robbery and kidnaping) but not the court, which happened to be the juvenile court. Then, by persistent questioning he got before the jury irrelevant details and circumstances and consequences of the events that occurred in the juvenile court on the 2nd and the 22nd of March, 1948; a good deal of it after the overruling of defense counsel's objection that "this is beyond the scope of direct and it certainly has carried too far. It is irrelevant, inflammatory; it has gone far beyond the scope of the direct."

But that is not all. When it developed that this was a juvenile court proceeding the prosecutor gave the trial court no assistance in appraising the situation. He kept his silence. He did not speak up to recognize the error or to suggest that the testimony be stricken and the jury be admonished to disregard it. Did he keep his silence in the hope that this very damaging series of impeachment questions and answers might remain in the record?

The precise information which the prosecutor displayed that he possessed of the details of the proceeding to which he referred makes it difficult to believe that he did not know that this was a juvenile court proceeding. If he did know, he acted in violation of his duties as a public prosecutor. "A criminal prosecution should not be defiled to the status of a sordid game in which the People attempt by trick and device to get inadmissible, prejudicial evidence before the jury. Striking out a portion of the wrongfully admitted evidence and instructing

---

\*We arrive at the same result in this case if we use the affirmative test enunciated in *People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243]: "a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.''

the jury to disregard that portion stricken out, as shown above, is not likely, in a case such as this, to repair the damage done. . . . The prosecuting lawyer who resorts to such practice is twice answerable: For the honor of his profession as a lawyer; for the integrity of the State in the proceeding he conducts." (*People* v. *Orcalles*, 32 Cal.2d 562, 572 [197 P.2d 26].)

Even if we were to indulge in the inference that the prosecutor in this case conducted his cross-examination in ignorance of the legal principles which apply when the impeachment of a witness is sought, the result is no less prejudicial to the defendant. The case turned upon the question whether to believe Baker or to believe the defendant. The evidence concerning defendant's juvenile court proceeding (including unnecessary details even if it had been a felony conviction) was presented to the jury early during the cross-examination. It stayed in throughout the remainder of defendant's cross-examination until the next morning. We can not say that striking this evidence from the record and admonishing the jury to ignore it operated to erase its effect from their minds. It went in not without objection but even if it had, the prejudicial effect must have remained. (See *People* v. *Lyons*, 47 Cal.2d 311, 321-322 [303 P.2d 329]; *People* v. *Hardy*, 33 Cal.2d 52, 61-62 [198 P.2d 865]; *People* v. *Wynn*, 44 Cal.App.2d 723, 732-733 [112 P.2d 979]; *People* v. *Freitas*, 34 Cal.App.2d 684, 687 [94 P.2d 397]; *People* v. *Stafford*, 108 Cal.App. 26, 29-31 [290 P. 920].)

In view of this conclusion we need not consider other questions discussed by the parties.

The judgment and the order denying a new trial are reversed.

Peters, P. J., and Bray, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 20, 1957.