[Crim. No. 676. Fifth Dist. Mar. 17, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT MOSQUEDA, Defendant and Appellant.

## Counsel

Eugene W. Krum, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Jack R. Winkler and Willard F. Jones, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**GARGANO, J.**—Defendant appeals from a judgment of conviction entered on a jury verdict finding him guilty of grand theft in violation of section 487 of the Penal Code and assault with a deadly weapon in violation of section 245 of the Penal Code. He contends that the court erroneously instructed the jury as to the definition of an assault with a deadly weapon; he also maintains that he is entitled to a new trial, first, because he did not expressly waive his right to testify on his own behalf and, second, because he did not receive adequate representation by counsel.

On June 14, 1968, at about 6 o'clock in the evening, Ray Fenimore saw three men load Wayne Phillips' new $325 lawn mower into a car and drive away with the mower hanging out of the front door. Fenimore and Phillips chased the car, and after about two blocks found it stopped on

the road. The lawn mower had fallen out, but the three men were still in the automobile. However, as Fenimore and Phillips approached on foot, two men got out and ran; defendant remained seated behind the steering wheel. Then, when Phillips started to open the door on the driver's side, defendant rested a pistol on the door ledge, pulled back the cocking slide, and pointed the gun at Phillips. He told Phillips to "back off" and finally said, "leave" or "go on." A moment later, Phillips started to look at defendant's license plate, and Mosqueda said, "Don't turn around." Afterward, defendant drove away.

Six days later Phillips recognized defendant at a stop light; Mosqueda was in the same car he had used the day the lawn mower was taken. Defendant maneuvered his car so that Phillips could not see the license plate, and then turned left with Phillips in pursuit. Phillips was stopped by a Fresno police officer who, being told of what happened, followed defendant and stopped him.

Defendant insists that the manner in which the trial judge modified the standard jury instruction on the definition of an "assault with a deadly weapon" was prejudicial and requires a reversal of the judgment. The judge crossed out the term "deadly weapon" and inserted the word "gun" so that the instruction read as follows:

"As assault with a deadly weapon is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another
           gun
with a ~~deadly weapon~~. An unlawful attempt to commit violent injury includes a threat to do so where the person threatening imposes a condition which must be at once performed and which he has no right to impose and his intent immediately to enforce performance by violence.

"To constitute an assault with a deadly weapon, actual injury need not be caused. The characteristic and necessary elements of the offense are the unlawful attempt or threat, as defined to you, with criminal intent to commit
                                  gun
a violent injury upon the person of another, the use of a ~~deadly weapon~~ in that attempt, and the then present ability to accomplish the injury."

█ Defendant assumes that an unloaded gun is not a deadly weapon, and argues that the modified instruction is prejudicial because it did not permit the jury to decide "whether the gun was loaded or unloaded or being used as a club."

Under Penal Code section 240, an assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another." And, under Penal Code section 245, if it is committed with

a deadly weapon, it is an aggravated assault and a felony. ■ Thus, under the plain language of section 240, it is not the subjective belief of the victim which is determinative, but whether the person charged with the assault had the "present ability to commit a violent injury." Accordingly, it has been stated that if a person points an unloaded gun at another, without any intent or threat to use it as a club or bludgeon, he does not commit a simple assault under Penal Code section 240, because "there is in such a case no present ability to commit a violent injury on the person threatened *in the manner in which the injury is attempted to* be committed." (*People* v. *Sylva,* 143 Cal. 62, 64 [76 P. 814].) If a person who points an unloaded gun at another without threatening to use it as a club or bludgeon does not commit a simple assault under section 240, a fortiori, he does not commit an assault with a deadly weapon under section 245. ■ Therefore, since the trial judge told the jury, in substance, that to commit an assault with a deadly weapon a person must attempt to commit a violent injury on another with the "then present ability to accomplish the injury," the instruction was sufficiently informative and not prejudicial even if we should assume arguendo that an unloaded gun is not "per se" a deadly weapon as defendant suggests.[1]

■ We believe that the modified instruction was not prejudicial for another reason. Defendant did not testify nor offer any other evidence to prove that the gun which he allegedly pointed at Wayne Phillips was unloaded. On the other hand, respondent's evidence on this issue, though entirely circumstantial, was amply sufficient to convince the jury that the gun was loaded (*People* v. *Hall,* 87 Cal.App. 634, 636 [262 P. 50]). Defendant and two other men brazenly stole Wayne Phillips' lawn mower during daylight hours and apparently while Phillips was using it to mow Ray Fenimore's lawn. Moreover, as Phillips and Fenimore approached the defendant's car, defendant's two accomplices got out and ran, but, significantly, defendant remained seated behind the steering wheel. Then, when Phillips attempted to open the car door, defendant picked up a pistol, pulled back the cocking slide, pointed it at Phillips, who was only two feet away, and told him to "back off" and "to leave" or "go on." A moment later defendant, to prevent Phillips from seeing his license plate,

---

[1]"Firearms used as such are obviously or inherently deadly weapons." (1 Witkin, Cal. Crimes (1963), § 266, pp. 251-252.) Conversely, unloaded firearms cannot be used as such and arguably are not inherently deadly weapons. But see: *People* v. *Graham,* 71 Cal.2d 303, 327-329 [78 Cal.Rptr. 217, 455 P.2d 153]; *People* v. *Raleigh,* 128 Cal.App. 105, 107 [16 P.2d 752]; *People* v. *Seaman,* 101 Cal.App. 302, 305 [281 P. 660]; *People* v. *Hall,* 87 Cal.App. 634 [262 P. 50]; *People* v. *Freeman,* 86 Cal.App. 374, 375 [260 P. 826]; *People* v. *Shaffer,* 81 Cal.App. 752, 755 [254 P. 666]; and *People* v. *Egan,* 77 Cal.App. 279, 284 [246 P. 337].

ordered Phillips not to turn around. It is unlikely that the jury would have reached a different verdict if the trial judge had not modified the instruction (art. VI, § 13). The jury obviously believed that defendant stole Phillips' lawn mower and then threatened him with a pistol, and absent any evidence to the contrary, it is inconceivable that if the trial judge had given the standard instruction without modification the jury would have believed that the gun was unloaded and found defendant not guilty of an assault with a deadly weapon.

Next, defendant demands a new trial because he did not testify in his own behalf, and the record does not indicate that he expressly waived his right to do so. Briefly, defendant equates his right to testify on his own behalf with a defendant's right to a jury trial and suggests that the judge should have advised him of the right and then secured an express waiver before proceeding with the trial.

In this state, the right to a jury trial in a criminal case is deemed a sacred right and of such fundamental proportions that by constitutional mandate it may be waived only "by the consent of both parties, expressed in open court by the defendant and his counsel, . . ." (Cal. Const., art. I, § 7.) It is for this reason that it is repeatedly stated that the waiver of a jury trial must be expressed in words by the defendant and cannot be implied from his conduct. (*In re Tahl,* 1 Cal.3d 122, 131 [81 Cal.Rptr. 577, 460 P.2d 449]; *People* v. *Holmes,* 54 Cal.2d 442 [5 Cal.Rptr. 871, 353 P.2d 583]; *People* v. *Pechar,* 130 Cal.App.2d 616 [279 P.2d 570]; *People* v. *Garcia,* 98 Cal.App. 702 [277 P. 747].) However, a defendant's right to testify in his own behalf is merely one of many rights guaranteed by the Fourteenth Amendment to the federal Constitution to insure a fair trial (*Ferguson* v. *State of Georgia,* 365 U.S. 570 [5 L.Ed.2d 783, 81 S.Ct. 756]). Like the right to produce evidence and to confront and cross-examine adverse witnesses, it must be exercised with caution and good judgment, and with the advice and under the direction of competent trial counsel. It necessarily follows that a trial judge may safely assume that a defendant, who is ably represented and who does not testify is merely exercising his Fifth Amendment privilege against self-incrimination and is abiding by his counsel's trial strategy; otherwise, the judge would have to conduct a law seminar prior to every criminal trial.

We believe that defendant's failure to testify does not involve a question of waiver but, if anything, involves the issue of adequate representation by counsel. In an adversary system, the right to be represented by counsel is also deemed of such fundamental proportions that it may be waived only in open court (*In re Roberts,* 40 Cal.2d 745 [255 P.2d 782]); it is through this right that unskilled and otherwise helpless defendants can

effectively safeguard their other constitutional rights. Thus, if a defendant does not testify at his trial because of some misconception on the part of his lawyer, his real complaint is that he was denied effective representation by counsel, not that he was denied the opportunity to waive his right to testify in open court. This in turn brings us to defendant's last contention.

■ Defendant claims that he did not testify at his trial because the public defender erroneously advised him that if he testified the People could impeach him by disclosing his past criminal record to the jury. According to defendant, he was committed to the California Youth Authority for several offenses handled in juvenile court; he has since learned these offenses may not be used for impeachment purposes. (Welf. & Inst. Code, § 503; *People v. Gomez,* 152 Cal.App.2d 139 [313 P.2d 58].) Defendant therefore concludes that he was deprived of a vital defense as a result of his trial counsel's misconception of the law and that he is entitled to a new trial under the rationale of *People v. Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487].

It is of course possible that defendant's failure to testify contributed toward his conviction. But defendant's assertion that he did not testify because his trial counsel advised him that he could be impeached by his past criminal conduct is not supported by the official record. It is elementary that matters not part of the official record, and which are only mentioned or included in the brief of one of the parties, cannot be considered on appeal. (*People v. Shaffer,* 182 Cal.App.2d 39, 46 [5 Cal.Rptr. 844].)

The judgment is affirmed.

Stone, P. J., concurred.

**COAKLEY, J.**—I concur, with this additional comment.

Reference is made in the opinion to *People v. Sylva,* 143 Cal. 62 [74 P. 814]. That case holds that pointing an unloaded gun at another, accompanied by a threat to discharge it, does not constitute an assault with a deadly weapon, or even simple assault, even though the person at whom it was pointed menacingly was thereby placed in great fear. If that is the correct interpretation of Penal Code section 240 (simple assault) and Penal Code section 245 (assault with a deadly weapon), then I respectfully suggest that the Legislature reconsider those statutes.

It is not difficult to conjure situations in which pointing an unloaded gun at another in a threatening manner can have most serious consequences, e.g., (1) induce a heart attack on the part of the person threat-

ened, (2) cause the driver of a car so threatened to speed away, killing or injuring himself and pedestrians, and (3) permit a suspect to hold at bay and then escape from police officers investigating a crime.[1] Certainly, one causing such a result should be held criminally responsible for such conduct.

---

[1]See *People* v. *Vaiza*, 244 Cal.App.2d 121 [52 Cal.Rptr. 733]. In that case, while police officers were questioning the defendant for suspicious conduct at 2 a.m., he stepped back, pointed what appeared to the officers to be a pistol, said, "All right, stick 'em up," then turned and ran. One of the officers fired at the fleeing defendant, who escaped unharmed. However, bullets from the officer's gun struck two automobiles. The defendant testified that he pointed only a toy gun at the officers. The "gun" was never found.