[Crim. No. 24778. Second Dist., Div. Two. June 28, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRY LEE RANSON, Defendant and Appellant.

318

## Counsel

William E. Brugman for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and David R. Chaffee, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**BEACH, J.**—After a court trial, defendant was convicted of assault with a deadly weapon on a police officer engaged in the performance of his duties

(Pen. Code, § 245, subd. (b)); the court also found that he had used a firearm, to wit, a .22 caliber rifle, within the meaning of Penal Code section 12022.5.[1]

FACTS:

During a quarrel with his parents, appellant, who is deaf, gave sign indications that he was going to take a gun and get himself killed. He made signs that he was going to shoot at a police officer, who would shoot back and kill him. Appellant intentionally put his fist through the glass door of a gun cabinet and removed a .22 caliber rifle, used it as a club against his parents, and left the house. His father notified the deputies of Norwalk Sheriff's Department; he told them appellant had taken an empty gun and that he was afraid appellant would take a shot at somebody to get himself killed. He felt appellant wanted to "go out in a blaze of glory."

The police broadcast the above information, naming and describing appellant. Within an hour or two Deputy Pendergist, who had heard the radio call, observed appellant at the center island at a gas station. He had seen appellant before.

When Deputy Pendergist drove into the service station, he saw appellant take a rifle and assume a "combat-stance position." Appellant's right hand was tightening around the trigger portion of the rifle; the gun was pointing directly toward the officer. Appellant did not comply with Pendergist's direction to drop the gun; the deputy drew his service revolver and fired two quick shots. Appellant jumped behind the gasoline pump, rose, and aimed the rifle toward the radio car. Deputy Wertz (Pendergist's partner) fired one shot but missed appellant, who again ducked. Deputy Pendergist observed some movement on the rifle, similar to the movement made if someone were cocking or operating a bolt on a rifle. A gas station patron saw appellant "messing with the gun" and "fooling with it somewhere around the firing mechanism" before the gunshots started.

Appellant again aimed the rifle in the direction of the police vehicle. Deputy Pendergist fired one shot, striking appellant in the left knee. Appellant fell, and the rifle skidded away from him. Pendergist retrieved the rifle, removed the magazine or clip, and placed them in the trunk of his vehicle.

At the time of the incident, appellant had a number of live .22 caliber bullets and a 9 millimeter Luger bullet loose in his pants pocket.

---

[1]On a motion by the People, count II (assault with intent to commit murder) was dismissed. A charged prior conviction was found to be not true.

Upon examining the rifle, Deputy Pendergist found there was no round in the chamber of the rifle. In examining the magazine clip he observed that the top round was pointed with its nose in a downward angle into the clip. He also observed longitudinal scratch marks across the casing of the top bullet, indicating that the rifle jammed when appellant was attempting to shoot.

Later that day Sergeant Montgomery unloaded the magazine of its evidence bullets, loaded two laboratory test bullets into the magazine, inserted the magazine into the rifle, pulled the operating handle back, let it go forward, and fired the rifle twice. He had no difficulty in loading or firing the rifle.

Appellant testified he took the rifle to go to the mountains with friends; he denied telling his parents he was going to shoot an officer. He admitted he had previously taken some .22 bullets from his parents' home and had them in his pocket when he took the rifle. At a nearby park he took the .22 clip and filled it with bullets until it was full. He went to the service station and waited for his friends, who did not come. He took the clip out of his pocket and shoved it into the rifle, but it seemed to be jammed. When he was fiddling with it, he felt a bullet coming from behind. He swung around with the gun in hand and was surprised to see the police. Though he tried to tell them to stop, they kept shooting; appellant said "I give up" and threw his gun away. Then he was hit in the knee by a bullet. He testified that he never had his rifle at his shoulder, nor did he point it at the officers.

In rebuttal, Mrs. Houseman, employed at Frank's Tavern, stated that appellant was there when she came on duty about midnight and that he appeared "high" but not drunk. She wrote appellant a note asking him to put his rifle outside and saying she would give him the water he had requested. He responded by dropping the clip out of the rifle onto the ground, picked it up, and put it in his pocket.

CONTENTIONS ON APPEAL:

Appellant contends that (1) the evidence establishes that appellant lacked the present ability to commit a violent injury on the peace officer or lacked the intent to do so; and (2) the court applied the wrong law to the case.

DISCUSSION:

1. *The evidence established that appellant had both the intent to commit a violent injury on a peace officer and the present ability to do so.*

(a) *The intent.*

The question of appellant's intent seems frivolous at best. Appellant's father testified that his son told him he was going to shoot at an officer. The court could also infer intent from appellant's actions at the gas station. (*People* v. *Gaines,* 247 Cal.App.2d 141, 148 [55 Cal.Rptr. 283].) There is substantial evidence supporting a finding of intent to commit a violent injury.

(b) *The present ability.*

Section 240 of the Penal Code provides: "An assault is an unlawful attempt, *coupled with a present ability,* to commit a violent injury on the person of another." (Italics added.)

It is settled in California that pointing an unloaded shotgun does not constitute "present ability." (*People* v. *Sylva,* 143 Cal. 62, 64 [76 P. 814]; *People* v. *Mosqueda,* 5 Cal.App.3d 540 [85 Cal.Rptr. 346]; 1 Witkin, Cal. Crimes (1963) § 257.) Similarly, threatening to shoot someone with a toy gun or candy pistol does not show the requisite present ability to commit a violent injury. (*People* v. *Vaiza,* 244 Cal.App.2d 121 [52 Cal. Rptr. 733].) On the other hand, an automatic rifle does present such "present ability" when there are loaded cartridges in the magazine of the rifle even though the firing chamber is empty; only an "instantaneous transfer" is necessary. (*People* v. *Simpson,* 134 Cal.App. 646, 650 [25 P.2d 1008].)

The instant case presents a unique fact situation. The rifle held by appellant was definitely loaded and operable; however, the top cartridge that was to be fired was at an angle that caused the gun to jam. There was evidence from which the trial court could infer that appellant knew how to take off and rapidly reinsert the clip.

Time is a continuum of which "present" is a part. "Present" can denote "immediate" or a point near "immediate." The facts in *People* v. *Simpson, supra,* 134 Cal.App. 646, for example, present a situation where the gun could be fired nearly immediately. We are slightly more removed from "immediate" in the instant case; however, we hold that the conduct of appellant is near enough to constitute "present" ability for the purpose of an assault.

We hold that it was not an abuse of discretion under these facts for the trial court to find that appellant had the present ability to commit a violent injury in that he could have adjusted the misplaced cartridge and fired very quickly.

## 2. ■ *The trial court applied the correct law.*

Appellant claims that the trial court failed to consider whether he had the present ability to commit a violent injury and instead based his denial of defendant's motion under section 1118 of the Penal Code on the law applicable to the crime of attempted murder, which does not require the "present ability" that is necessary for assault.

The trial court did cite *People* v. *Van Buskirk,* 113 Cal.App.2d 789, 793 [249 P.2d 49], a case involving a murder attempt where a jammed cocking mechanism kept the rifle from firing. However, the court also cited *People* v. *Simpson, supra,* 134 Cal.App. 646, and stated that "One question . . . in this particular case would be the question as to whether or not the gun was, in fact, fireable. By reason of possibly a misalignment of the lead shell in the magazine." Since there was no question that the rifle herein was operable, the trial court must have been referring to whether the condition of the gun gave appellant the present ability to commit violent injury. From our review of the record, it appears that the court was aware of the primary legal problem in this case.

If the reference by the court to an attempted murder case was not apposite to the case at bench, such reference was immaterial. The same result would have been reached by reference to correct legal authority. "'A decision right in result will not be reversed even though the reason stated is wrong.'" (*People* v. *Evans,* 249 Cal.App.2d 254, 257 [57 Cal. Rptr. 276]. See also *People* v. *Gurley,* 23 Cal.App.3d 536, 539-540, fn. 1 [100 Cal.Rptr. 407].) As discussed above, appellant did have the present ability under correct legal authority.

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.