**UNITED STATES, Appellee,**

v.

**Private E–1 Joseph C. CATO, SSN 136–56–3648, United States Army, Appellant.**

**CM 444446.**

U.S. Army Court of Military Review.

30 April 1984.

Captain Thomas J. Feeney, JAGC, argued the cause for the appellant. With him on the brief was Lieutenant Colonel Paul J. Luedtke, JAGC.

Captain Robert L. Swann, JAGC, argued the cause for the appellee. With him on the brief were Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Major Patrick M. Flachs, JAGC.

Before HANSEN, SU–BROWN and BADAMI, Appellate Military Judges.

## OPINION OF THE COURT

SU–BROWN, Judge:

Consistent with his pleas, appellant was convicted by a military judge sitting as a general court-martial of the violation of a lawful general regulation by discharging a firearm in an unauthorized area, negligent destruction of military property, assault with a dangerous weapon, and two specifications of drunk and disorderly, in violation of Articles 92, 108, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. 892, 908, 928, and 934 (1976) [hereinafter UCMJ], respectively. He was sentenced to a bad-conduct discharge, confinement at hard labor for eight months, and forfeiture of $300.00 pay per month for eight months. The convening authority approved the sentence.

The primary issue in this case is whether the rifle brandished by appellant at several military police on 30 December 1982 was a dangerous weapon within the meaning of Article 128, UCMJ. Appellant contends that his repeated efforts to load the rifle while drunk resulted in jamming a round backward into the chamber. This rendered the rifle inoperable and consequently, was not a dangerous weapon. Therefore, his plea of guilty was improvident. We disagree and affirm.

The facts presented at trial reveal that on 30 December 1982, appellant and some friends drove off post to buy and drink some beer. While in the local community, he also purchased a rifle and some ammunition. He then stored the rifle and ammunition in the trunk of the car. Returning to post, appellant continued to drink and became intoxicated. Later that day, while in the parking lot near his barracks, appellant removed the rifle from the car, loaded it and fired a round. The rifle then jammed. Appellant entered the barracks brandishing the rifle. Refusing to put down the weapon upon request, he left the barracks and began to walk toward the battalion headquarters building. The military police surrounded appellant on a public street and ordered him to put down the weapon. Ignoring the military police, appellant waived the rifle in front of him, and began yelling that he was going to kill everyone. He continued to walk, pointing the rifle at whoever spoke to him. When a vehicle approached, appellant turned and aimed directly at it. A military policeman (Specialist Four Woods) ordered appellant to drop the weapon. Appellant turned and aimed the rifle at Woods, whereupon Specialist Woods shot and wounded him. Appellant was then apprehended.

During the inquiry into the providence of the plea, appellant informed the military judge that an examination of the rifle after the apprehension revealed that a round was lodged backward in the chamber. As a result, the rifle could not have been fired until the rifle was first cleared and a round properly chambered.

 Assault with a dangerous weapon may be committed only if there is "present ability" to commit the battery. This offense is not established by the subjective state of mind of the victim but rather, by an objective test as to whether the weapon ·is used as a dangerous weapon. As a result, aiming an unloaded rifle as a firearm at a person is not an assault with a dangerous weapon, regardless of the state

of mind of the victim, or the assailant. *United States v. Bush*, 47 C.M.R. 532, 535 (C.G.C.M.R.1973); *United States v. Reid*, 42 C.M.R. 573, 574 (A.C.M.R.1970); *People v. Mosqueda*, 5 Cal.App.3d 540, 544, 85 Cal.Rptr. 346, 347 (1970); para. 207*c*(1), Manual for Courts-Martial, United States, 1969 (Revised edition) [hereinafter MCM]; 2 C. Torcia, *Wharton's Criminal Law*, 181 (14th ed. 1979). However, a fully operational carbine with live ammunition in the magazine has not been found to be "unloaded" simply because there was no round in the chamber. *United States v. Lamp*, 44 C.M.R. 504, 506 (A.C.M.R.1971). *See also People v. Martinez*, 120 Cal.App.3d 698, 174 Cal.Rptr. 771, 776 (Ct.App.1981); *People v. Simpson*, 134 Cal.App. 646, 25 P.2d 1008, 1010 (1933).

■ During the providence inquiry, appellant admitted that he pointed a loaded rifle at Specialist Four Woods, and that the rifle was a dangerous weapon. Although the weapon was apparently jammed at the time, the lodged round could have been readily cleared and properly chambered. Although we have found many cases pertaining to loaded and unloaded weapons, we have not discovered any military cases pertaining to jammed weapons. However, a virtually identical issue was addressed in *People v. Ranson*, 40 Cal.App.3d 317, 321, 114 Cal.Rptr. 874, 877 (1974). In *Ranson*, the accused assumed a "combat stance" and aimed a loaded and operable rifle at a police officer. Appellant refused to drop the rifle during a standoff with the police, and was subsequently shot and apprehended. Examination of the rifle revealed that the top cartridge was at an angle which caused the weapon to jam. The court found sufficient evidence to infer the accused knew how to clear and reload the rifle. Under these circumstances, the conduct of the accused was held to constitute "present ability" for the purpose of an assault. Applying the analysis to the case at bar, we find that the fortuitous jamming of a round does not render a loaded rifle harmless. There is sufficient evidence to conclude that appellant had the "present ability" to commit the aggravated assault

because he could have readily cleared the rifle and properly chambered a round. *Id.; see also United States v. Lamp*, 44 C.M.R. at 506. Therefore, we find that the loaded rifle wielded by appellant on 30 December 1982 was a dangerous weapon.

We are convinced that appellant's plea of guilty to assault with a dangerous weapon (Charge IV, Specification 2) was provident and we find that the factual circumstances revealed by the appellant and contained in the stipulation of fact objectively support his plea. *United States v. Foster*, 14 M.J. 246 (C.M.A.1982).

■ Appellant also urges that his pleas of guilty were improvident because they were based upon substantial misunderstanding of the sentence. We reject appellant's argument in regard to assault with a dangerous weapon. However, we do find merit in appellant's contention that the military judge improperly calculated the maximum punishment as to Charge I, violation of a lawful general regulation by discharging a firearm in an unauthorized area. A violation of a lawful general regulation normally provides for a maximum punishment of a dishonorable discharge and two years of confinement at hard labor. However, if a punitive regulation enjoins conduct already prohibited by the Code, the violation of the regulation will not increase the punishment otherwise imposable. *United States v. Ettleson*, 13 M.J. 348, 359 (C.M.A.1982); par. 127*c*, Table of Maximum Punishments, n. 5, MCM.

■ Appellant contends that the factual basis for Charge I was his careless discharge of a firearm, in violation of Article 134, UCMJ. Such conduct is punishable by three months of confinement at hard labor. We disagree and conclude that the discharge of a firearm in an unauthorized area is not lesser included or closely related to the careless discharge of a firearm. *See United States v. Walter*, 20 U.S.C.M.A. 367, 43 C.M.R. 207 (1971). However, we are persuaded that the facts closely resemble another, more serious violation of Article 134, the wrongful and willful discharge

of a firearm under circumstances as to endanger life, which is punishable by a dishonorable discharge and one year of confinement at hard labor. *See United States v. Hand*, 46 C.M.R. 440 (A.C.M.R. 1972). The facts reveal that appellant's discharge of the rifle in the parking lot was both wrongful and willful, and endangered human life. Consequently, the military judge overstated the maximum imposable punishment by one year during his inquiry into the providence of appellant's plea.

We are satisfied that the appellant was not misled by a substantial misapprehension regarding the maximum punishment in this case. *United States v. Tenney*, 15 M.J. 779, 783 (A.C.M.R.1983).

We have reviewed the remaining assignments of error and find them to be lacking in merit.

The findings of guilty and the sentence are affirmed.

Chief Judge HANSEN and Judge BADAMI concur.