Filed 9/16/25  P. v. Kalloghlian CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>DANNY-GEORGE KALLOGHLIAN,<br><br>     Defendant and Respondent. | 2d Crim. No. B338728<br>(Super. Ct. No.<br>LA099566)<br>(Los Angeles County) |

Following a preliminary hearing, Danny-George Kalloghlian was held to answer on one felony count of assault with a firearm (Pen. Code, § 245, subd. (a)(2)).[1]  He filed a section 995 motion to set aside the information based on insufficient evidence of the required element of "present ability" to apply force, arguing the firearm was unloaded.  The trial court granted the motion and dismissed the case.  The People appeal.

As we shall explain, sufficient evidence was presented at the preliminary hearing to support the magistrate's

---

[1] All further statutory references are to the Penal Code.

determination to hold Kalloghlian to answer.  Accordingly, we reverse the trial court's order granting the section 995 motion and remand for further proceedings.

*Facts and Procedural Background*

In January 2022, Los Angeles Police Department Officers Sean Opteyndt and Esteban Martinez responded to a call regarding a man brandishing a firearm, driving a black Mercedes SUV.  The officers conducted a high-risk traffic stop of the vehicle.  Kalloghlian was the driver.  When Officer Martinez searched the vehicle, he found a black "Glock" firearm in the glove compartment and a magazine with nine rounds inside it located in the center console.  There was no lock on the glove compartment, which could be opened by pulling a lever.

The officers contacted Robert A., the victim, who stated that he had been driving his car when he was cut off by another vehicle.  He pulled up next to the vehicle and said to the driver, "Slow the fuck down. You have a dog and there's children around.'"  The driver responded, "'You calm the fuck down.  Do you want to die?'"  The driver retrieved a firearm from inside his vehicle and pointed it at the victim.  The victim, in fear, slowed down, drove behind the vehicle, and called the police.  The victim later identified Kalloghlian as the person who pointed a gun at him.

In July 2023, Kalloghlian was charged by felony complaint with the crime of assault with a firearm (§ 245, subd. (a)(2), count 1).[2]

---

[2] Kalloghlian was also charged with brandishing a weapon in the presence of a person who is an occupant of a motor vehicle in violation (§ 417.3, count 2).  This charge was dismissed at the

2

At the preliminary hearing in November 2023, Officer Martinez testified that when he searched Kalloghlian's vehicle, the Glock and the magazine "were in separate compartments, but they were easily accessible within hand-reach from the glove compartment and center console." Officer Martinez opined that, "Had someone wanted to place that magazine inside the gun to make it easier or readily available, they're within arms' reach of each other."

After the People rested, the defense moved for dismissal of count 1, arguing that there was no evidence the gun was loaded and thus no present ability to create harm. The magistrate rejected this argument and held Kalloghlian to answer. As the magistrate explained, "I believe this is an assault with a firearm. I believe to load a magazine into a Glock takes about five seconds." The magistrate further stated: "I think that it's quite possible and probable that the gun was loaded at the time [Kalloghlian] pointed it at [the victim]."

In December 2023, Kalloghlian was charged by felony information with the crime of assault with a firearm (§ 245, subd. (a)(2)). He filed a motion to set aside the information pursuant to section 995. At the hearing on the motion, defense counsel argued, "the elements [for section] 245, [subdivision] (a) are very well-known, and present ability is the factor we are focusing on today, and it's well-settled and there is no dispute that the law requires that the firearm be actually loaded. . . . If it isn't, there is no assault."

In April 2024, the trial court granted the section 995 motion and explained, "I don't think this was a factual finding by

preliminary hearing because there was no evidence the vehicles were moving when Kalloghlian brandished the firearm.

3

the prelim judge.  She made an inference.  And my view is that there is no evidence that the gun was loaded.  So I don't think her ultimate conclusion was correct."  The trial court further explained, "I think, obviously, the fact that the gun is pointed at someone doesn't necessarily mean it's loaded.  [¶]  And the inferences that were drawn, in my view, were not enough.  So I'm going to grant the motion at this time."

*Discussion*

The People contend the trial court erred in granting the section 995 motion because Kalloghlian had the means to strike immediately, and given the proximity of the loaded magazine, along with his statements and conduct, the magistrate could rationally infer that the firearm was loaded when Kalloghlian pointed it at the victim.  The People also rely on the recent decision in *People v. Lattin* (2024) 107 Cal.App.5th 596 (*Lattin*), review denied (Mar. 19, 2025), which held that there is no brightline rule in California that a gun must be loaded for a defendant to have the "present ability" to commit violent injury on another.

"'[I]n proceedings under section 995 it is the magistrate who is the finder of fact; the superior court has none of the foregoing powers, and sits merely as a reviewing court; it must draw every legitimate inference in favor of the information, and cannot substitute its judgment as to the credibility or weight of the evidence for that of the magistrate. [Citation.] On review by appeal . . . the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate. . . .'" (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)

4

The purpose of a preliminary examination is to establish whether there exists probable cause to believe that the defendant has committed a felony.  (§ 866, subd. (b); see also § 872, subd. (a) [defendant must be held to answer if "it appears from the examination that a public offense has been committed, and there is sufficient cause to believe that the defendant is guilty"].)

"[T]he showing required at a preliminary hearing is exceedingly low."  (*Salazar v. Superior Court* (2000) 83 Cal.App.4th 840, 846.)  "'"Probable cause is shown if [a person] of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused."'"  (*Rideout v. Superior Court* (1967) 67 Cal.2d 471, 474; *Perry v. Superior Court of Los Angeles County* (1962) 57 Cal.2d 276, 283 ["'"[reasonable] and probable cause" may exist although there may be some room for doubt"'].)  "'Evidence that will justify a prosecution need not be sufficient to support a conviction.' [Citations.] 'We will not set aside an information "if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it."'"  (*People v. Scully* (2021) 11 Cal.5th 542, 582.)

*The "Present Ability" Requirement*

Section 240 defines assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  In *People v. Chance* (2008) 44 Cal.4th 1164 (*Chance*), our Supreme Court explained that the "present ability element of assault . . . is satisfied when 'a defendant has attained the means and location to strike immediately.' [Citations.]"  (*Id.* at pp. 1167-1168.)  "In this context . . . ," the Court explained, "'immediately' does not mean 'instantaneously.' It simply means that the defendant must have the ability to inflict injury on the

5

present occasion . . . even if the defendant is several steps away from actually inflicting injury . . . ." (*Id.* at p. 1168, fn. omitted.)

Here, the evidence presented at the preliminary hearing was that Kalloghlian had "immediate" access to the loaded magazine and the firearm, both of which were within arm's reach of where he was sitting. As the magistrate explained, "[if] there was no magazine within arm's reach, then I would agree with [defense counsel] that there is not a count 1, but I think that it's quite possible and probable that the gun was loaded at the time that [Kalloghlian] pointed it at [the victim]." This is a rational and logical inference in view of the evidence presented. (See *People v. Penunuri* (2018) 5 Cal.5th 126, 147 ["the fact that the gun was loaded may be inferred from circumstantial evidence" and assault conviction will be upheld "if the inference is reasonable"].)

Kalloghlian contends the direct prosecution evidence was that the firearm was unloaded. He asserts that California courts have consistently held that evidence the firearm was loaded is required to satisfy the present ability to apply force element of assault.

Although proof that a firearm was unloaded can be a complete defense to charges of assault, "it is not a complete defense in all circumstances *as a matter of law*." (*Lattin, supra*, 107 Cal.App.5th at pp. 616, 613, italics added; see also *People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 542, fn. 10 [requirement that a firearm be loaded to comprise "present ability" is an "anachronism"]; *People v. Rodriguez* (1999) 20 Cal.4th 1, 11, fn. 3 [recognizing "long line" of California decisions holding that an assault is not committed by merely pointing an unloaded gun at

6

another person but declining to address the "continuing viability" of the rule because it was not questioned or briefed].)

Our colleagues in the Fourth District recently examined the present ability element of assault in *Lattin* where the defendant pointed an unloaded shotgun at several victims when ammunition was immediately available to him and could be loaded into the firearm within seconds. (*Lattin*, *supra*, 107 Cal.App.5th at pp. 602-605, 613.) The defendant argued that the present ability element of assault cannot be satisfied with an unloaded gun if the defendant was too far away from the victim to inflict injury with the firearm as a club or bludgeon. (*Id.* at p. 600.) The *Lattin* court rejected this contention, holding that assault with a firearm can be committed with an unloaded gun by a defendant who has ammunition available and the means to load it immediately. (*Id.* at pp. 600, 612-613.)

*Lattin* explained that the present ability element of assault is assessed on a continuum whereupon ""'[p]resent" can denote "immediate" or a point near "immediate."'" (*Lattin*, *supra*, 107 Cal.App.5th at p. 611, quoting *People v. Ranson* (1974) 40 Cal.App.3d 317, 321.) *Lattin* examined several cases where the "present ability" element was satisfied under circumstances slightly more removed from "immediate" on the continuum. (See *Lattin*, at pp. 611-612, examining *People v. Simpson* (1933) 134 Cal.App. 646, 647-648, 650-652 [present ability satisfied where defendant had to first transfer a cartridge to the firing chamber of his rifle by operation of a lever]; *Chance*, *supra*, 44 Cal.4th at p. 1172 [present ability satisfied where defendant pointed his gun in the wrong direction and had rounds in the magazine but none in the firing chamber]; *Ranson*, *supra*, at pp. 319-321 [present ability satisfied where jammed rifle required defendant to remove

7

the clip from the gun, dislodge jammed cartridge, reinsert the clip, chamber a round, point the weapon and pull the trigger].)

Extending the logic of those cases, *Lattin* concluded that, "[i]f ammunition is readily available . . . it is a question for the jury whether a defendant with an unloaded gun possesses the means to load the gun and shoot immediately, or whether he is too many steps away from inflicting injury to have the present ability to commit assault." (*Lattin*, *supra*, 107 Cal.App.5th at pp. 600, 612.)[3]

Applying *Lattin*'s reasoning here, even if the firearm was unloaded when Kalloghlian pointed it at the victim, the "present ability" element could still be satisfied because the evidence presented at the preliminary hearing showed that ammunition was "readily available." Thus, whether he possessed the means to load his firearm and shoot it immediately is a question for a jury to decide.

Based on the foregoing, we conclude the trial court erred in granting the section 995 motion.

---

[3] In reaching this holding, the *Lattin* court acknowledged its disagreement with the Judicial Council of California Criminal Jury Instructions and suggested the authors reconsider the practice note for CALCRIM No. 875, which states: a "'gun must be loaded unless used as [a] club or bludgeon'" in order "'to have [the] present ability to inflict injury.'" (*Lattin*, *supra*, 107 Cal.App.5th at pp. 601-602.)

*Disposition*

The trial court's order is reversed and the matter is remanded to the trial court for further proceedings.

<u>NOT TO BE PUBLISHED</u>.


YEGAN, Acting P. J.

We concur:


BALTODANO, J.


CODY, J.

9

Joseph A. Brandolino, Judge
Superior Court County of Los Angeles
_____

George Gascón and Nathan J. Hochman, District Attorneys, Grace Shin, Cassandra Thorp, and Jeffrey Herring, Deputy District Attorneys, for Plaintiff and Appellant.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Respondent.