[Nos. F005255, F005324. Fifth Dist. July 28, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
TONY GOMEZ, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I through IV.

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Joan W. Cavanagh, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and J. Robert Jibson, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**BALLANTYNE, J.—**

### Introduction

A jury convicted defendant Tony Gomez of second degree murder. The defendant raises several issues on appeal.

Reviewing the record as we must for the version of the events which is most favorable to the People (*People* v. *Jimenez* (1978) 21 Cal.3d 595, 609 [147 Cal.Rptr. 172, 580 P.2d 672]), it discloses the following scenario:

The defendant was employed by Stevens Contractors and was assigned to work with Ron Kullins and Michael Shelton. Other employees Randy Hackleman and Paul Cotton were assigned to work together at a nearby site.

It was Shelton's first day on the job and he borrowed defendant's tools, including his insulation knife, off and on during the day. Defendant ran out of twine for the job he was doing and drove to where Hackleman and Cotton were working to obtain some twine from their truck.

As defendant started to drive off the tires of the truck spun and threw dust all over Hackleman and Cotton. Hackleman picked up some gravel rocks and threw them toward the truck and walked up to the driver's side of the truck. He started cussing and telling defendant to get out of the truck. Defendant got out of the truck and Hackleman took two swings at defendant and, as he missed, fell to the ground. Defendant said they could settle the matter after work because he did not want to get fired for fighting on the job.

After defendant drove back to his assigned work site, he told Shelton and Kullins that he was going to "whip Hackleman's ass." Defendant also told Kullins he was going to bring a gun the next day and asked Kullins where Hackleman lived and stated that if he knew where he lived he would shoot his place up and shoot him. Defendant then told Kullins about an incident in Los Angeles when he was assaulted by four people. During that incident he ran into a house, got a knife and stabbed one of the individuals in the leg.

As Kullins, Shelton and defendant were cleaning up the jobsite preparing to leave, Kullins and defendant placed their tools, as was the custom, in the back of the truck, but defendant put his insulation knife in his back pocket.

Later at the construction yard Hackleman asked defendant why he threw the gravel at them. Defendant replied "What the f—— are you going to do about it?" Hackleman pushed defendant; a push-and-shove match ensued and both started swinging. Defendant backed up and pulled a knife out of his pocket.

He then told Hackleman to come on and Hackleman asked defendant to put the knife down. Hackleman kept backing away from defendant and began to run, but defendant pursued him to a fence. Hackleman yelled to Cotton for assistance and Cotton attempted to get the knife away from defendant. A struggle ensued and Hackleman sustained a six-inch fatal stab wound to his chest. Cotton jumped up and said Hackleman had been stabbed. Defendant got up and alternatively walked and ran toward his car with the knife in his hand, wiping the blood off of it with his shirt. Defendant said "I will teach you not to f—— with a beaner." Defendant drove away in his Chevy automobile. He left his bloodied shirt on the kitchen counter at his house and then drove with his live-in girlfriend, Yvonne Pacheco, in a Ford Pinto to the police station.

Defendant denied trying to stab Hackleman and stated he was scared. He did recall that he threw his knife into a grassy area.

### DISCUSSION

### I.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . .

### V.

#### WAS THE JURY MISINSTRUCTED REGARDING CIRCUMSTANCES WHICH NEGATE MALICE? IF SO, DID IT RESULT IN PREJUDICIAL ERROR?

The jury was instructed pursuant to CALJIC No. 8.40, voluntary manslaughter defined. It provides: "The crime of voluntary manslaughter is the unlawful killing of a human being without malice aforethought when there is an intent to kill.

"There is no malice aforethought if the killing occurred upon a sudden quarrel or heat of passion, [*or*] [in the honest but unreasonable belief in the

---

*See footnote on page 986, *ante*.

necessity to defend oneself against imminent peril to life or great bodily injury].

"In order to prove the commission of the crime of voluntary manslaughter, each of the following elements must be proved:

"1. That a human being was killed,

"2. That the killing was unlawful, and

"3. That the killing was done with the intent to kill." (Italics added.)

The jury was also instructed pursuant to CALJIC No. 8.50, murder and manslaughter distinguished. It provides: "The distinction between murder and manslaughter is that murder requires malice while manslaughter does not.

"When the act causing the death, though unlawful, is done [in the heat of passion or is excited by a sudden quarrel such as amounts to adequate provocation] [in the honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury] the offense is manslaughter. In such a case, even if an intent to kill exists, the law is that malice, which is an essential element of murder, is absent.

"To establish that a killing is murder and not manslaughter, the burden is on the state to prove beyond a reasonable doubt each of the elements of murder and that the act which caused the death was not done in the [heat of passion or upon a sudden quarrel] [in the honest, even though unreasonable, belief in the necessity to defend against imminent peril to life or great bodily injury]."

A comparison of CALJIC Nos. 8.40 and 8.50 shows that CALJIC No. 8.50 omits in two places the bracketed "or" present in CALJIC No. 8.40 which separates the two distinct theories that can reduce a murder to manslaughter.

After retiring for deliberation the jury returned to the courtroom and asked that the first degree murder instruction be given again. This was done. The foreman then requested that the court read second degree murder instructions "while we are here." The court did so. The court then volunteered that the next instruction was voluntary manslaughter and the foreman asked if they could simply be told the difference between second degree murder and voluntary manslaughter. The court read CALJIC No. 8.50 to the jury as

previously set forth omitting the "or" in both paragraphs two and three. The jury retired again to deliberate.

The jury once again returned to the courtroom and asked for either a rereading or printed copies of instructions for second degree murder and voluntary manslaughter. The court offered to send in CALJIC Nos. 8.30 (unpremeditated murder of the second degree), 8.31 (second degree murder—killing resulting from act dangerous to life), 8.40, 8.42 (sudden quarrel or heat of passion and provocation explained),[1] 8.44 (no specific emotion alone constitutes heat of passion),[2] and 3.31 (concurrence of act and specific intent and/or mental state). The parties agreed to these instructions and defense counsel requested that CALJIC Nos. 8.50 and 8.55 (homicide—proximate cause—defined) also be sent in. The court agreed and the jury was given the written form of the instructions.

Defendant asserts that "[b]y omitting 'or' between heat of passion/sudden quarrel and unreasonable self-defense, either one of which negates malice, the court effectively eliminated unreasonable self-defense as a separate defense to murder and made it an additional requirement to the heat of passion/sudden quarrel defense. This error requires reversal."

---

[1]CALJIC No. 8.42 provides: "To reduce an intentional felonious homicide from the offense of murder to manslaughter upon the ground of sudden quarrel or heat of passion, the provocation must be of such character and degree as naturally would excite and arouse such passion, and the assailant must act under the smart of that sudden quarrel or heat of passion.

"The heat of passion which will reduce a homicide to manslaughter must be such a passion as naturally would be aroused in the mind of an ordinarily reasonable person in the same circumstances. A defendant is not permitted to set up his own standard of conduct and to justify or excuse himself because his passions were aroused unless the circumstances in which he was placed and the facts that confronted him were such as also would have aroused the passion of the ordinarily reasonable man faced with the same situation. The question to be answered is whether or not, at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment.

"If there was provocation, but of a nature not normally sufficient to arouse passion, or if sufficient time elapsed between the provocation and the fatal blow for passion to subside and reason to return, and if an unlawful killing of a human being followed such provocation and had all the elements of murder, as I have defined it, the mere fact of slight or remote provocation will not reduce the offense to manslaughter."

[2]CALJIC No. 8.44 provides: "Neither the emotion of fear, of itself, nor the emotion for revenge, of itself, nor the emotion induced by and accompanying or following an intent to commit a felony, of itself, nor any or all of these emotional states, in and of themselves, constitute the heat of passion referred to in the law of manslaughter which I have stated to you. Any or all of such specific emotions may be involved in a heat of passion that causes judgment to give way to impulse and rashness, but also any one or more of them may exist in the mind of a person who acts deliberately and from choice following his own reasoning howsoever good or bad it may be. Hence the law sets up the standard and requires the test that I previously have stated to you for determining whether or not the defendant acted under heat of passion."

Respondent contends that when all the instructions given by the court are considered it is clear that the jury understood that there were two distinct theories which could negate malice. Respondent asserts that even if the omission was error it did not rise to a miscarriage of justice requiring reversal.

■ "'In a case where there is a conflict in the instructions and the court erred in the giving of one or more of them, and where it is impossible to determine whether the jury followed the law as correctly or as incorrectly set before them, a new trial will be ordered if by such error the defendant's substantial rights were affected.'" (*People* v. *Honeycutt* (1946) 29 Cal.2d 52, 61-62 [172 P.2d 698].)

"[T]he case law is clear that whether the giving of a concrete instruction is confusing or erroneous must be determined from the instructions as a whole. . . . 'Error cannot be predicated upon an isolated phrase, sentence or excerpt from the instructions since the correctness of an instruction is to be determined in its relation to other instructions and in the light of the instructions as a whole. [Citations.] Accordingly, whether a jury has been correctly instructed is not to be determined from a part of an instruction or one particular instruction, but from the entire charge of the court.'" (*People* v. *Patterson* (1979) 88 Cal.App.3d 742, 753 [152 Cal.Rptr. 183].)

■ Clearly the omission of the "or" in CALJIC No. 8.50 was erroneous. It might have caused the jury to blend the concepts of sudden quarrel and the unreasonable belief of the necessity to defend oneself. The initial error was repeated in the rereading of CALJIC No. 8.50 and the submission of the written instructions to the jury without the requisite "or" in each paragraph.

The question remains whether the other instructions cured the possible confusion. The jury was given separate instructions which defined heat of passion and imperfect self-defense.[3] They were set forth as separate reasons to negate malice and find the defendant not guilty of murder. Each instruction allowed for malice to be negated on the basis of only one theory. No mixing of theories occurred here.

---

[3]CALJIC No. 5.17 provides: "A person who kills another person in the honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury, kills unlawfully, but does not harbor malice aforethought and cannot be found guilty of murder. This would be so even though a reasonable man in the same situation seeing and knowing the same facts would not have had the same belief. Such an honest but unreasonable belief is not a defense to the crime of [voluntary] [or] [involuntary] manslaughter." (Although CALJIC No. 5.17 was read in the initial charge to the jury, it was not included in the instructions given in written form to the jury.)

Although CALJIC No. 8.50 when read orally mixed the two theories, the theories were separated by brackets when given to the jury in written form. The jury was also given CALJIC No. 8.40 which clearly separated the theories with an "or." When the entire instructional phase is viewed as a whole, it is clear that the jury understood the two distinct theories. The result is that the jury did not operate under a misconception of law. (*People* v. *Wright* (1985) 39 Cal.3d 576, 589 [217 Cal.Rptr. 212, 703 P.2d 1106].)

DISPOSITION

The judgment is affirmed.

Franson, Acting P. J., and Martin, J., concurred.

A petition for a rehearing was denied August 25, 1986.