[No. F013025. Fifth Dist. Feb. 6, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN O'NEAL CRAIG, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Rhoda Lee Sapirstein, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Jane N. Kirkland and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THAXTER, J.**—A jury convicted appellant Kevin O'Neal Craig on one count of assault with a deadly weapon or by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)). By its verdict the jury acquitted Craig on a count of attempted murder. Before trial Craig admitted a prior conviction for armed robbery alleged in the information as a five-year sentence enhancement. (Pen. Code, §§ 667, subd. (a), 1203, subd. (e)(4) and (5), and 1203.08.) Appellant was sentenced to a nine-year prison term, consisting of four years on the assault charge and the consecutive five-year enhancement.

On appeal Craig claims the jury was improperly instructed, there was insufficient evidence to support the verdict, and the court erroneously commented on the evidence to Craig's prejudice. We reject all of Craig's contentions and will affirm.

### FACTS

In 1989, Craig was a ward of the California Youth Authority at the Mt. Bullion Youth Conservation Camp. In January 1989, Craig was assigned to the counseling group of newly hired counselor, Gloria Fernandez. For the most part Craig was one of the better wards at Mt. Bullion. However, problems arose between him and Fernandez.

Craig told Fernandez she reminded him of a woman he used to date. Fernandez took this to mean Craig had a crush on her, and she explained to him their relationship could only be a platonic friendship, one between counselor and counselee.

Thereafter Craig began expressing feelings of anger and aggression. He said he sometimes felt like "going off on staff" and that when he was "disrespected" he would get revenge. He also told Fernandez he wondered how many people he would kill before he was stopped. These expressions of aggression led to Craig being evaluated by a camp psychologist in April 1989.

During the psychological evaluation, Craig stated he did not like the way Fernandez treated him and that he would "think of ways to get her back like hitting, wishing she got hit by the car, fell off a cliff."

On June 7, 1989, at a group counseling session, Fernandez asked Craig to read out loud in front of the group. Appellant refused even though Fernandez insisted. The day after the session, Craig told Fernandez he felt she had mistreated him and that he and "the fellas" were "fixing to take care of it."

On June 9, 1989, Craig, essentially unsupervised, washed a car belonging to senior youth counselor Kent Kreller which was located approximately 75 yards from Fernandez's 1987 Honda. The Honda was parked straight in, facing the administration building. The area was not secured.

After the end of her work week at midnight on June 9, 1989, Fernandez went to her car in preparation to leave for the weekend. Fernandez lived at the camp on the five days she worked and left in her own private vehicle each weekend for her days off. Craig knew this was her pattern.

When Fernandez got into the car she followed her habitual practice of putting her foot on the brake before shifting from the parking gear. The brake pedal went all the way to the floor. Realizing something was wrong and suspecting she had no brakes, she sought assistance from a coworker. The two determined there was no fluid in the master brake cylinder. Fernandez left that night in a state car.

When she returned from her days off, she called a mechanic to look at the car. The mechanic determined that the brake lines had been cut—two clean cuts on both sides. The car had immediately lost all brakes once the cuts were made. The mechanic testified that anyone attempting to start or drive the car would know the brakes were gone because it is customary to put one's foot on the brake pedal in the process.

The road leading down from Mt. Bullion is winding and dangerous. Brakes are needed to take the hill safely. Craig had been down the road numerous times.

The incident was investigated by the Mariposa Sheriff's Department and the Department of Justice. Fernandez said she believed Craig might be involved. Craig was questioned during a two-and-one-half-hour interview and eventually admitted his involvement. Craig first denied any participation but later claimed he and another ward named "Chino" cut the brake lines. Craig claimed the two discussed their plan and obtained wirecutters from the workshop at camp. Chino cut one side and Craig attempted to cut .

the other side but was unsuccessful. Chino then cut Craig's side as well. Craig insisted he did not intend to harm Fernandez but instead only wanted "to get even" for her mistreatment of him. Craig told investigating officers where the wirecutters were left but the cutters were not located. After the interview, Craig was transported back to the camp by Kreller. Craig told Kreller he was sorry for violating Kreller's trust in him.

On June 15, 1989, Fernandez heard Craig say either, "I wish she would have gone off the hill" or "she should have gone off the hill."

In his trial testimony Craig denied cutting the brake lines. He claimed he only told investigating officers he believed Chino had cut the lines and explained how he thought this was done. He testified the other statements attributed to him were misheard and misunderstood.

## Discussion

### I.  *Jury Instructions*

Appellant claims the court committed prejudicial error when it gave the following instruction to the jury:

"A person may be guilty of committing an assault with a deadly weapon or instrument against the victim even though at the time of the assault the victim is so situated as to have an impervious defense."

The instruction was taken from the holding in *People* v. *Valdez* (1985) 175 Cal.App.3d 103 [220 Cal.Rptr. 538]:

"[W]e hold a defendant can commit the crime of assault even though his intended victim, unknown to him, has thrown up an apparently impervious defense. We need not reach and do not decide the issue presented by a would-be assailant who *knowing* his victim is behind a bulletproof barrier fires merely as a joke or to release his frustrations. But this is far different from the assailant who lacks this knowledge or even one who knows of the bulletproof barrier yet blazes away like some perverted Don Quixote in the *hope* he might realize his impossible dream—and the victim's worst nightmare." (175 Cal.App.3d at p. 114.)

According to appellant the instruction given is wrong because it fails to inform the jury that the impervious defense must be unknown to the defendant at the time of the assault. However, Craig's contention is based on an incorrect reading of the *Valdez* opinion. In its analysis the *Valdez* court never considered or discussed the defendant's knowledge. Instead, the key

to the court's analysis was whether the circumstances and events which prevented injury were within the defendant's control and whether the method and actions chosen by the defendant were otherwise capable of inflicting injury.

In *Valdez*, the issue was whether a defendant could stand convicted of an assault after having fired three shots at a clerk who was standing behind bulletproof glass in an all-night gas station. The issue had never before been decided in California. In order to understand the application of the *Valdez* holding to the instant case, a careful review of the court's analysis is required.

The court in *Valdez* began its discussion by noting that under California law a necessary element of the offense of assault with a deadly weapon is that the defendant have the "present ability" to commit the offense. Further, the court acknowledged that in light of this element, and the legislative intent it reveals, California does not recognize the offense of attempted assault. (175 Cal.App.3d at pp. 108-109; see also *In re James M.* (1973) 9 Cal.3d 517, 521-522 [108 Cal.Rptr. 89, 510 P.2d 33]; *People* v. *Duens* (1976) 64 Cal.App.3d 310, 314-315 [134 Cal.Rptr. 341].)

The court went on to consider what proof the term "present ability" requires. There are two possible treatments of the term. The first is to equate "present ability" with "factual possibility" and conclude that when, because of external circumstances, it is impossible to inflict injury on the victim by the method chosen by a defendant, the defendant lacks the ability to commit the assault and thus cannot be found guilty of the offense under California law. (*Valdez, supra,* 175 Cal.App.3d at p. 109.) A second approach is to define "present ability" as referring only to the ability of the person attempting the unlawful injury and not to the external circumstances beyond his or her control which might prevent injury and thus frustrate the defendant's intent. (*Ibid.*)

The *Valdez* court found the second approach more favorable, in part because it is more consistent with the body of authority addressing the issue of factual versus legal impossibility in attempt offenses. It noted the well-accepted rule in this related area imposing criminal liability for assault when external factors not controlled by the defendant prevented injury in a particular case but not imposing liability when external factors render it impossible for the injury *ever* to occur. (175 Cal.App.3d at pp. 110-111.) In other words, if a third person prevents the assaultive blow from hitting its mark or the victim outmaneuvers the bullet with a timely duck, the defendant may be guilty of assault. On the other hand, if the defendant aims with a toy gun or attempts to poison with powdered sugar, there can be no

criminal assault. (See *People* v. *Ranson* (1974) 40 Cal.App.3d 317, 321-322 [114 Cal.Rptr. 874]; *People* v. *Mosqueda* (1970) 5 Cal.App.3d 540, 543-544 [85 Cal.Rptr. 346]; *People* v. *Vaiza* (1966) 244 Cal.App.2d 121, 124-125 [52 Cal.Rptr. 733]; *People* v. *Simpson* (1933) 134 Cal.App. 646, 650-652 [25 P.2d 1008].)

A defendant's knowledge of circumstances which may prevent injury is simply not relevant if, notwithstanding the circumstances, defendant has the ability to carry out the method of assault chosen. *Valdez* cannot be read as injecting a requirement that the defendant know the method he or she has chosen will successfully inflict injury. Present ability does not mean certain success. Appellant cites no authority for the proposition that only assaultive behavior with a high probability of success is punishable. Therefore, a defendant's knowledge of the probability of success of his or her intended action is not relevant to the jury's deliberation. The instruction given is not as clear as it might be but it does not misstate the law, or more importantly, remove an essential element of the offense from the jury as appellant contends. Appellant did not request clarifying instructions and has waived any claim that the instruction was incomplete or needed amplification in light of the facts of this case. (See *People* v. *Reed* (1952) 38 Cal.2d 423, 430 [240 P.2d 590].)

Even if the instruction's lack of clarity is deemed error, there is no prejudice under either the *Watson*[1] or the *Chapman*[2] standard.

The record does not support a finding that Fernandez was protected from injury under all circumstances. The mechanic testified it was common to put one's foot on the brake pedal when starting a car and that once Fernandez did so, she would immediately know the car's brakes were gone. However, even though under normal circumstances Fernandez could not drive the car without learning that she had no brakes, that is not to say it was impossible for appellant's actions to result in injury to Fernandez. For example, it is possible Fernandez could have received distressing news and left for home upset and emotionally unstable. Under such emotional travail it is possible she might have overlooked the pressureless brake pedal or attempted to drive the car even though she believed there was something wrong with the brakes. Appellant did nothing to disable the car. It could have been driven from the camp, albeit unsafely.

It is also possible Fernandez, for some reason or another, may have diverted from custom and not depressed the brake pedal until after leaving

---

[1] *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].
[2] *Chapman* v. *California* (1967) 386 U.S.18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].

the camp. The car's battery might have failed and Fernandez, with the assistance of others, might have pushed the car out of the parking space and jump-started the motor. Fernandez could have then left the camp without using the brakes. Although these factual circumstances seem remote, they remain within the realm of possibilities and no reasonable juror could conclude Fernandez was in an impervious position, i.e., that injury could not have resulted from appellant's actions under any circumstance.

Moreover, the external circumstance which here prevented injury was not some unforeseen event. It was simple discovery. The victim in this case recognized the risk and took effective steps to avoid injury. Fernandez chose not to drive the car once the defective brakes were discovered. ▪ Effective steps taken to avoid injury by a wise victim have never been held to negate "present ability." (*People* v. *Valdez, supra*, 175 Cal.App.3d at p. 113; see also *People* v. *Yslas* (1865) 27 Cal. 630.)

▪ The jury was given proper instructions on what the term "present ability" means and what findings are required to establish that particular element. CALJIC No. 9.01 sets forth the correct statement of law with regard to the definition of present ability. In light of the instructions given, any confusion resulting from the giving of the challenged special instruction was cured by No. 9.01. The element appellant claims was removed from the jury was, in reality, squarely before it. Since the jury did not operate under a misconception of law, the judgment may be affirmed. (*People* v. *Gomez* (1986) 183 Cal.App.3d 986, 992 [228 Cal.Rptr. 553].)

▪ If appellant intended to argue he cut Fernandez's brakes only to frighten her or as a joke, he should have requested an instruction presenting this theory to the jury. Having failed to do so, he cannot now complain. The trial court had no duty to give such an instruction sua sponte. (See *People* v. *Vidaurri* (1980) 103 Cal.App.3d 450, 462-463 [163 Cal.Rptr. 57].)

II., III.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

---

* See footnote, *ante*, page 644.

## DISPOSITION

The judgment is affirmed.

Martin, Acting P. J., and Dibiaso, J., concurred.

A petition for a rehearing was denied March 4, 1991, and appellant's petition for review by the Supreme Court was denied April 17, 1991.