Filed 6/25/13  P. v. Valencia CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G046656 |
|        v. | (Super. Ct. No. 11CF0012) |
| SERGIO ANTONIO VALENCIA, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Request to augment record on appeal.  Judgment affirmed.  Request denied.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

\*      \*      \*

A jury found defendant Sergio Antonio Valencia guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1); all further statutory references are to this code) and making a criminal threat (§ 422, subd. (a)), with a true finding he personally used a deadly weapon (§ 12022, subd. (b)(1). Defendant admitted several enhancement allegations, including one for a prior serious felony conviction (§ 667, subd. (a)(1)), and the superior court sentenced him to seven years in prison.

On appeal, defendant requests we independently review the denial of his pretrial motion for discovery of a police officer's personnel record. The Attorney General agrees with this request. Defendant has also filed a request to augment the record to include the personnel record. We deny defendant's augmentation request and conclude the trial court properly denied his discovery motion. Defendant also challenges the sufficiency of the evidence that he had the present ability to commit an assault and claims the trial court erred in failing to give a unanimity instruction on the criminal threat charge. Because the evidence supports the jury's verdict and there was no prejudicial instructional error, we affirm the judgment.

FACTS

Camilo Valencia, defendant's father, worked as a gardener. He slept in a garage where he stored his tools, which included machetes. Defendant worked with his father and also slept in the garage.

Valencia testified that while he was asleep in the garage, defendant entered, woke him up, grabbed a machete and left. He admitted defendant appeared to be drunk or under the influence of something. But he denied defendant either punched or threatened to kill him. Valencia closed and locked the garage door.

Later, Valencia heard a loud noise caused by the machete striking the garage door and creating a hole in it. While standing near the door, he was struck in the

2

face by an inch long splinter. Valencia began yelling for help. A portion of Valencia's preliminary hearing testimony was read into the record where he testified that while defendant struck the garage door with the machete, he said, "'Open the door or I'm going to kick it down.'" Again, Valencia denied hearing defendant threatening to kill him.

The noise of the machete hitting the garage door stopped and Valencia heard a police officer order him to open the door. Valencia acknowledged an officer asked if he was okay, mentioned the scratch on his face, and took some photographs, but claimed the police left without asking him any other questions.

Several police officers went to the garage's location in response to a report of a person with a machete banging on a garage door. Officer David Juarez testified that as he and the other officers approached, they saw defendant aggressively striking the garage door with a machete. According to Juarez, defendant "with urgency placed the machete inside the hole that he had made and he let go of it. He threw it inside the garage." The officers then announced their presence and arrested defendant.

Hearing noises and someone calling for help, the police opened the garage door and found Valencia inside. Juarez testified Valencia was shaking and very nervous. He questioned Valencia about what happened. Juarez claimed Valencia said that earlier in the evening defendant awakened him, hit him, and threatened to kill him before taking the machete and leaving the garage. Frightened, Valencia closed and locked the garage door. Later, Valencia was awakened by defendant banging on the door and again threatening to kill him.

DISCUSSION

1. *The Denial of Defendant's Discovery Motion*

Defendant filed a pretrial motion seeking disclosure of information from Juarez's personnel records. The court found good cause existed to conduct a review of

3

the officer's personnel file to determine whether it contained discoverable material relevant to his credibility. During an in camera hearing, the police department's custodian of records was placed under oath and, under questioning by the trial judge, described the documentation in Juarez's file concerning investigations of misconduct, including complaints of dishonesty received from both citizens and departmental sources. The court determined Juarez's file did not contain any discoverable information and ordered the transcript of the hearing sealed. It also declined a defense request to maintain a copy of the documentation it reviewed. We have conducted an independent review of the sealed transcript and conclude the court's refusal to disclose any material in Juarez's personnel records constituted neither an abuse of its discretion nor a violation of defendant's due process rights. (*People v. Myles* (2012) 53 Cal.4th 1181, 1209; *People v. Lucas* (2013) 214 Cal.App.4th 707, 712.)

Defendant's request to augment the record with Juarez's personnel file so we can review the documents the trial court considered lacks merit. The materials considered by the court during the in camera hearing are described in detail in the sealed transcript. *Myles* rejected a similar argument, noting "[t]he sealed transcript that is before us, in which the court 'state[d] for the record what documents it examined,' is adequate for purposes of conducting a meaningful appellate review. [Citation.]" (*People v. Myles, supra,* 53 Cal.4th at p. 1209; see also *People v. Mooc* (2001) 26 Cal.4th 1216, 1229 ["court can photocopy" the documents examined "and place them in a confidential file," "prepare a list of the documents it considered, or simply state for the record what documents it examined"].)

2. *Sufficiency of the Evidence for the Assault Conviction*

The information charged defendant with committing assault with a deadly weapon against his father using the machete. The court instructed the jury that to support a conviction on this charge, in part it had to find "[w]hen the defendant acted he had the

4

present ability to apply force" to another.  (CALCRIM No. 875.)  Defendant challenges the sufficiency of the evidence to support his conviction, arguing he "did not have the required present ability because he was outside the locked garage, unable to gain entry and access to his father."  We disagree.

"'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]  On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.]'  [Citation.]"  (*People v. Perez* (2010) 50 Cal.4th 222, 229.)  "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]"  (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

"[T]he present ability element of assault . . . is satisfied when 'a defendant has attained the means and location to strike immediately.'  [Citations.]"  (*People v. Chance* (2008) 44 Cal.4th 1164, 1167-1168, quoting *People v. Valdez* (1985) 175 Cal.App.3d 103, 113.)  Defendant was outside of the garage armed with a machete.  The machete had a 24-inch steel blade and Valencia testified it was capable of "cut[ting] right through" branches four to five inches in diameter.

Defendant notes "[h]e was outside a locked garage" and, "[a]ssuming . . . that his intent was to hack his way into the garage, he would have been there for a considerable length of time.  He had already been banging for several minutes and had succeeded in making only a relatively small hole in the door."  This argument ignores both the relevant law and the evidence.

In *Chance*, the Supreme Court held "[i]n this context, . . . 'immediately' does not mean 'instantaneously.'  It simply means that the defendant must have the ability to inflict injury on the present occasion.  Numerous California cases establish that

5

an assault may be committed even if the defendant is several steps away from actually inflicting injury, or if the victim is in a protected position so that injury would not be 'immediate,' in the strictest sense of that term."  (*People v. Chance, supra,* 44 Cal.4th at p. 1168, fn. omitted.)

There was evidence from which the jury could reasonably conclude defendant had the ability to break into the garage.  Defendant demanded his father open the door or he would "'kick it down.'"  The prosecution introduced a photograph of the hole he created in the garage door.  It was estimated to be 12 inches in size.  In denying defendant's section 1118.1, the trial judge described it as "[a] big hole" and commented "to work at the garage door and make a hole the size that we s[ee] in that picture, I have to tell you, that's pretty compelling."

Defendant also claims he lacked the present ability to injure Valencia because his father closed and locked the garage door before he began hacking away at it. He argues a perpetrator "must first attain the location to strike immediately" before a "victim . . . gains safety" for present ability to exist.  In support of this argument he cites *People v. Valdez, supra,* 175 Cal.App.3d 103.  But that case does not support his argument.  In *Valdez,* the defendant, armed with a gun, fired several shots at a gas station cashier inside a booth with bullet proof glass.  The means used to protect the cashier from being injured or killed, the booth's bullet proof glass, existed long before the defendant arrived at the gas station or when he displayed the gun and began shooting.

There was also evidence defendant either thrust or threw the machete through the hole he had created.  On direct examination, Juarez testified he saw defendant "with urgency place[] the machete inside the hole that he had made and he let go of it." On cross-examination, Juarez acknowledged defendant's "hand actually went inside the door" and "when he took his hand out he didn't have the machete in it anymore." Valencia testified he was screaming for help while defendant was striking the door and standing close enough to it to be struck by a splinter from defendant's actions.

6

Defendant claims "[t]here is no evidence where [his father] was located [in the garage] or that the machete ever entered the garage prior to [his] dropping it through the small hole." As discussed above, the hole was described as a large one. Valencia's screaming would have given him some idea of his father's location inside the garage. Furthermore, "[p]resent ability does not mean certain success. Appellant cites no authority for the proposition that only assaultive behavior with a high probability of success is punishable. Therefore, a defendant's knowledge of the probability of success of his or her intended action is not relevant to the jury's deliberation." (*People v. Craig* (1991) 227 Cal.App.3d 644, 650.) Thus, the alleged ineffectiveness of defendant's assaultive effort did not negate his present ability to inflict injury.

Finally, contrary to defendant's belief, his present ability to injure his father was not negated simply because he knew the garage door was locked before the assault began. "A defendant's knowledge of circumstances which may prevent injury is simply not relevant if, notwithstanding the circumstances, defendant has the ability to carry out the method of assault chosen. . . ." (*People v. Craig, supra,* 227 Cal.App.3d at p. 650.)

We conclude the evidence supports the jury's verdict on the aggravated assault charge.

*3. Defendant's Instructional Error Claim*

The jury found defendant guilty of violating section 422, subdivision (a). It declares "[a]ny person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . is to be taken as a threat . . . which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety" is guilty of a crime.

7

Juarez testified Valencia told him defendant twice threatened to kill him on the night of the incident. According to Juarez, Valencia said defendant "came in" the garage "and started to attack him. During that attack . . . [defendant] made a statement to him stating . . . 'I'm going to kill you.'" Valencia also told Juarez that after he closed and locked the garage door and tried to go back to sleep he heard "banging on his garage door" and then heard "his son . . . again" declare "'I'm going to kill you' . . . ."

The defendant argues the court committed reversible error by failing to give the jury a unanimity instruction on this charge. We disagree.

Generally, "when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty. [Citation.]" (*People v. Jennings* (2010) 50 Cal.4th 616, 679; see also *People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "There are, however, several exceptions to this rule. For example, . . . [t]here . . . is no need for a unanimity instruction if the defendant offers the same defense or defenses to the various acts constituting the charged crime. [Citation.]" (*People v. Jennings, supra,* 50 Cal.4th at p. 679.)

While defendant twice threatened to kill his father, it is clear from the record the prosecution's focus was on the second threat and that the parties did not treat the two statements "I'm going to kill you" as two separate acts. Furthermore, contrary to defendant's argument it is clear the jury relied on the second threat as well.

Defendant cites to a comment by the prosecutor during her rebuttal argument where she stated, "Valencia heard his son threaten to kill him on two separate occasions, inside and outside that garage." However, a comprehensive review of the prosecutor's closing argument reflects she relied on the threat defendant made when he

8

tried to hack through the garage door to support conviction on this count. (*People v. Jantz* (2006) 137 Cal.App.4th 1283, 1292 [unanimity instruction not required "for . . . criminal threats offense" where "[a]ssuming there were two threats . . ., the record shows that the prosecutor clearly informed the jury in opening and closing argument that the People were electing the threat set forth in" one witness's testimony, thereby "obviat[ing] the necessity of a unanimity instruction"].)

On the first element, making a criminal threat, the prosecutor argued defendant "said it twice to [Valencia]. When he was first inside of the garage with [Valencia] he said, 'I am going to kill you.' But then later he had the machete in his hand and he was striking at that garage door and he was telling his father, who was on the other side, shaking, afraid, yelling out for help to neighbors for police, he was threatening to kill him."

As for the third element, whether defendant intended his statement be understood as a threat, the prosecutor argued: "What was [defendant] doing? As he was saying, 'I'm going to kill you,' he was hacking through a garage [door] with a machete to get to his father. Did he intend that statement to be a threat? Yeah." On the fourth element, a "threat . . . so clear, immediate, unconditional, and specific that it communicated . . . a serious intention and the immediate prospect" defendant would carry it out, the prosecutor cited defendant's "wielding a machete trying to get through a door to get him, when he's doing it with such force and such tenacity that he actually makes a hole the size of the one that was made in that garage, that's pretty clear."

Concerning the fifth element, whether the threat actually caused Valencia to be afraid, the prosecutor referred to the police photograph of Valencia taken on the night of the incident and his admission when "he saw this face and remembered, 'yeah, I was really afraid.'" She also cited Juarez's testimony that when the police opened the garage door Valencia "had to be calmed down." "Finally, element six, his fear was reasonable

9

under the circumstances. Obviously. His son's got a machete and he's hacking his way through a garage door that [Valencia is] in there by himself. Yes, that is reasonable."

Furthermore, defendant asserted no defense that distinguished between the threats. (*People v. Williams* (2013) 56 Cal.4th 630, 682 [unanimity instruction not required where the "[d]efendant did not offer a defense based on a showing that he committed either" offense "but not both"]; *People v. Riel* (2000) 22 Cal.4th 1153, 1199 [same].) First, citing Valencia's testimony at both the preliminary hearing and trial denying defendant threatened him, plus the father's purported confusion on the night of the incident, and mistakes in Juarez's police report, defense counsel argued, "I submit to you that whether those threats were even made has not been proved to you beyond a reasonable doubt. We have a police officer telling you what this witness said . . ., and this man [Valencia] has consistently . . . maintained that his son didn't say that to him." Second, defense counsel relied on the defense expert's testimony that defendant's intoxication precluded him from forming the specific intent necessary to support a criminal threat conviction. "[I]f [defendant] made the statement was he really of the mind where that would be meant as a threat and that his father would intend it as a threat? Is [defendant] behaving rationally? Is he behaving coherently?"

Finally, contrary to defendant's argument, the jury's true finding he was personally armed with a deadly weapon when making the criminal threat reflects they unanimously agreed defendant committed this crime when he threatened to kill his father while trying to break through the garage door. "The erroneous failure to give a unanimity instruction is harmless if disagreement among the jurors concerning the different specific acts proved is not reasonably possible. [Citations.]" (*People v. Napoles* (2002) 104 Cal.App.4th 108, 119, fn. omitted.) Defendant claims he "possessed the machete during both incidents." Not so. Juarez testified Valencia told him the first threat was made before defendant grabbed the machete and left the garage. Although at trial Valencia

10

denied being assaulted or threatened by defendant during the first incident, he acknowledged defendant took the machete as he left the garage.

Consequently, we conclude a unanimity instruction was not required or, if the trial court erred by failing to give it, the error was clearly harmless.

## DISPOSITION

The motion to augment the record on appeal is denied. The judgment is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

MOORE, J.

FYBEL, J.

11